

# NUMBER 13-26-00212-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF BROWNSVILLE,                                                          Appellant,

v.

HORTENCIA VILLARREAL
QUINTERO,                                                                    Appellee.

## ON APPEAL FROM THE 107TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

# MEMORANDUM OPINION

### Before Justices Peña, West, and Fonseca
### Memorandum Opinion by Justice Fonseca

Appellee Hortencia Villarreal Quintero filed suit against appellant the City of Brownsville (the City), asserting premises and special defect claims under the Texas Tort Claims Act (TTCA). The trial court denied the City's plea to the jurisdiction asserting it was entitled to governmental immunity. By five issues on appeal, the City argues the trial

court erred because: (1) the City is a separate entity from the Brownsville Public Utility Board (BPUB) and is not liable for BPUB's actions; (2) the City had no actual knowledge of the alleged dangerous condition at issue; (3) the City had no formal notice of Quintero's claim; (4) the City had no actual notice of the claim; and (5) the alleged dangerous condition at issue was not caused by the City or its employees. We reverse and render.

## I.  BACKGROUND

Quintero filed her original petition against the City on February 25, 2025. She alleged that, at around 11:00 p.m. on June 9, 2023, "her vehicle fell into a hole caused by the negligence of [the City]'s employees," resulting in personal injury and property damage. Quintero argued that the hole was in front of her residence, it resulted from "an improper compaction backfill in an excavated water main repair in the street," that this "dangerous hazard" was "created by [the City]," and its employees "manufactured [it] and knew it existed." She further asserted that the City's governmental immunity was waived by the TTCA and that she sent the City "a notice of the claim as required by" that statute. In an amended petition filed in February of 2026, Quintero asserted that she called the police after the incident and that a Brownsville Police Department officer responded to the scene and prepared a report.[1]

The City filed a plea to the jurisdiction on December 22, 2025, arguing it retained governmental immunity primarily because Quintero failed to provide the City with proper notice of her claim under the TTCA or the City Charter. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(a); *see also* TEX. GOV'T CODE § 311.034 ("Statutory prerequisites to a suit,

---

[1] According to Quintero's amended petition, BPUB personnel "replaced the service line" and "filled the hole" by 7:00 a.m. the next morning.

2

including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Colquitt v. Brazoria County*, 324 S.W.3d 539, 543 (Tex. 2010) (per curiam) (noting compliance with TTCA notice provisions is jurisdictional). According to the City, Quintero provided timely formal notice of her claim "only to [BPUB]," which is "a separate and distinct governmental entity." The City further argued Quintero "[c]annot prove that [the City] had actual notice of the injury, or its alleged fault in causing any injury." *See* TEX. CIV. PRAC. & REM. CODE § 101.101(c) (noting the formal notice requirement under section 101.101(a) "do[es] not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged"); *Reyes v. Jefferson County*, 601 S.W.3d 795, 798 (Tex. 2020) (per curiam) (holding a governmental unit has "actual notice" under the TTCA only if it has "knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved").

Finally, the City argued its "immunity remains intact because [it] did not have actual knowledge of the specific condition that caused [Quintero's] injury, and [Quintero] was not owed a heightened duty of care" under the TTCA pertaining to special defects. As evidence, it attached, among other things, a copy of the City Charter, the police report from the subject incident, Quintero's deposition testimony, and affidavits by City and BPUB employees.

Quintero filed a response to the City's plea arguing that "because BPUB is simply a department or agency of the City created by City Charter amendment . . . , notice to BPUB constitutes notice to the City." In support, she attached printouts from the websites

3

of the City, BPUB, and the Texas Municipal League. She later supplemented her response with an affidavit by Adolfo Edgar Cortez, a former BPUB Manager of Water Utilities, stating in relevant part that "the water main repair trench failed due to improper backfilling and dewatering procedures," "[t]he use of sand as a primary backfill material was inadequate," and "excess water saturated the sand, causing 'soil liquefaction' which turned the material into 'quicksand.'" Cortez opined that BPUB breached the applicable standard of care in various manners, and that these breaches were "the direct and proximate cause of the trench's structural failure and the resulting incident involving [Quintero's] vehicle."

After a brief hearing on February 19, 2026, the trial court took the matter under advisement. It later signed a written order denying the City's plea. This accelerated interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (allowing a governmental unit to appeal an interlocutory order denying its plea to jurisdiction).

## II. DISCUSSION

### A. Standard of Review

Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020). The plaintiff has the initial burden to plead facts affirmatively showing the trial court has jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *see Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022) (explaining a plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Tex. Dep't of Parks & Wildlife v. Miranda*,

4

133 S.W.3d 217, 226, 228 (Tex. 2004). When a jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, we review the relevant evidence to determine whether a fact issue exists. *Id.* at 227. Our standard of review mirrors that of a summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Miranda*, 133 S.W.3d at 227–28. But if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

**B.    Applicable Law**

Under the doctrine of sovereign immunity, courts lack subject matter jurisdiction over suits against political subdivisions of the State, such as the City, unless immunity has been clearly and unambiguously waived by the legislature. *City of Houston v. Hou. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) (noting the doctrine is referred to as "governmental immunity" when relating to subdivisions of the State); *see Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) ("[N]o state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." (quoting *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847))); *see also* TEX. GOV'T CODE § 311.034. Immunity from suit is properly asserted through a plea to the jurisdiction. *See City of Houston*, 549 S.W.3d at 576; *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006).

The TTCA clearly and unambiguously waives governmental immunity "to the extent of liability created" by the statute. TEX. CIV. PRAC. & REM. CODE § 101.025(a); *see*

5

*Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 285 (Tex. 2022). This includes liability for certain premises and special defect claims. Under the TTCA, "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." TEX. CIV. PRAC. & REM. CODE § 101.022(a). Similarly, "[i]f a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." *Id.* § 101.022(c). "Absent willful, wanton, or grossly negligent conduct, a licensee must prove the following elements to establish the breach of duty owed to him":

> (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; (5) the owner's failure was a proximate cause of injury to the licensee.

*Sampson v. Univ. of Tex. at Aus.*, 500 S.W.3d 380, 391 (Tex. 2016) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

The limitation of duty in section 101.022 "does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM. CODE § 101.022(b); *see Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009) (noting "[t]he TTCA does not define 'special defect' but likens it to 'excavations or obstructions' that exist 'on' the roadway surface. . . . [C]onditions can be special defects like excavations or obstructions only if they pose a threat to the ordinary users of a particular roadway" (internal quotation omitted)). Instead, a governmental unit's duty related to special defects is equivalent to that owed by a private person to an invitee. *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam). "Under an invitee standard, a plaintiff need only prove that the governmental unit should have known

6

of a condition that created an unreasonable risk of harm." *Id.* (citing *Payne*, 838 S.W.2d at 237). To show constructive knowledge in this manner, a claimant must prove that "a dangerous condition existed for some length of time"; otherwise "there is no basis upon which a factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 815–16 (Tex. 2002) (noting "temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition").

**C.      Analysis**

By its second issue, which we address first because it is dispositive, the City argues the trial court should have granted its plea to the jurisdiction because the record shows it had no "actual knowledge of a dangerous condition or that a special defect existed" prior to the accident at issue. *See Sampson*, 500 S.W.3d at 391. We agree.

In her deposition, Quintero testified through an interpreter that workers had been "[f]ixing the street" and "putting in new plumbing" outside her residence in May and June of 2023. She said there was "a lot of mud, a lot of dirt, [and] a lot of puddles" as a result of the construction, and she was occasionally unable to exit her driveway because of the presence of equipment. On June 9, 2023, after the workers had finished for the day, she departed her driveway in her car. When asked whether there were any holes in the street at that time, Quintero replied: "No, because they finished at 4:00 p.m., and they would flatten the dirt, and it would be perfect so that you can get out." Quintero stated that when she returned to her residence at around 11:00 p.m., there was "a lot of water in front of my house." She reiterated: "When I left my house at 4:00 in the afternoon, the street was even. There were no puddles. Then when I returned, there was a lot of water in the

7

puddle. It [was] like[ ]the pipe had burst, and I was going slow entering into my driveway [and] my two front tires fell to the puddle." She said she "got out [of the car] and jumped into the water," which was up to her knees, and two neighbors then used their truck to pull her car out of the puddle with a rope.

According to Quintero's uncontroverted testimony, although there was ongoing construction in the area, the street in front of her house was "perfect," "even," and "flat" as of 4:00 p.m. on the day of the accident. She alleges that a City police officer responded to the scene after the accident, but she does not allege, nor is there any evidence, that any City employee or representative was at the scene during the period that the defect allegedly developed—i.e., between 4:00 p.m. and 11:00 p.m. on June 9, 2023. There is no other evidence indicating that any City employee knew or should have known of the puddle. On this record, no fact finder could reasonably conclude the City had actual or constructive knowledge of the defect at issue. *See id.*; *Reece*, 81 S.W.3d at 816.

In response to the City's second issue, Quintero argues only that the merits of her claim "have no place in this [a]ppeal" because the City's plea was exclusively "based on lack of notice."[2] We disagree. The City's plea was principally based on lack of timely notice, but it also included several pages of analysis devoted to the argument that the City lacked "actual knowledge of the specific condition that caused [Quintero]'s injury." For the foregoing reasons, the trial court erred by rejecting this argument. *See Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 770–71 ("If . . . the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when

---

[2] In her response to the City's plea, Quintero made a different argument, without reference to any evidence: "The City's argument that it lacked actual knowledge of the dangerous condition is contradicted by the evidence. The City, through its departments and agencies, was aware of the ongoing construction project and the potential for dangerous conditions to develop."

necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim.").

We sustain the City's second issue. In light of our conclusion, we need not address the City's remaining issues. See TEX. R. APP. P. 47.1.

### III.    CONCLUSION

The trial court's judgment is reversed. We render judgment granting the City's plea to the jurisdiction and dismissing all of Quintero's claims against it.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
6th day of August, 2026.

9